UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AMERICAN HOME MORTGAGE CORP.

           Plaintiff,                  07 CV 7044 (DAB)

- against -

OMEGA FINANCIAL SERVICES, INC.

           Defendant

---

Declaration of Michael J. Needleman, Esquire in support of
<u>Defendant's motion to dismiss</u>

Michael J. Needleman declares, pursuant to 28U.S.C. section 1746 and under penalty of perjury, that the following is true and correct:

    1.    I am an attorney with the Chartwell Law Offices, LLP, attorney for defendant, Omega Financial Services, Inc. I am an attorney who applied to practice before this Court, on pending motion of William N. Aumenta, Esq. for my admission *pro hac vice*.

    2.    I am fairly familiar with the facts and circumstances of this action, and submit this declaration in support of defendant's motion to dismiss plaintiff's complaint pursuant to federal or civil procedure 12 (b) (3) and 28U.S.C. section 1404.

    3.    Attached hereto as Exhibit A is a true and complete copy of the complaint filed by defendant, Omega Financial Services, Inc against defendants, Innovia Estates and Mortgage Court and Maria Castillo, pending in the United States District Court for the District of New Jersey, Number 07-CV-1470 (JAG).

Dated: 8/13/2007

                                                  Michael J. Needleman

# **EXHIBIT A**

The Chartwell Law Offices, LLP
By:   Michael J. Needleman, Esquire

The Bell Atlantic Tower, Suite 2920
1717 Arch Street
Philadelphia, PA 19103

RECEIVED-CLERK
U.S. DISTRICT COURT

2007 MAR 29  A 11 53

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| OMEGA FINANCIAL SERVICES, INC.<br>1872 Morris Avenue<br>Union, New Jersey<br><br>v.<br><br>INNOVIA ESTATES & MORTGAGE CORP.,<br>1590 Oakland Road, Suite B-211<br>San Jose, CA 95131<br><br>and<br><br>MARIA A. CASTILLO,<br>1850 Davis Court<br>Los Banos, CA 93635 | CIVIL ACTION<br><br>NO. 07 - 1470 (JAG)<br><br>JURY TRIAL DEMANDED |

### COMPLAINT – CIVIL ACTION IN EQUITY AND AT LAW

Plaintiff, Omega Financial Services, Inc. (hereinafter, "Omega"), by and through the undersigned counsel, hereby complains of Defendants, Innovia Estates & Mortgage Corp. (hereinafter, "Innovia") and Maria A. Castillo (hereinafter, "Castillo"), and in support thereof, avers as follows:

### The Parties

1.   Omega is a New Jersey corporation, in business as a licensed mortgage

banker, licensed to do business in the States of New Jersey, Florida, Texas, California, and the Commonwealth of Pennsylvania, with its principal place of business located at 1872 Morris Avenue, Union, New Jersey.

2. Defendant, Innovia, is, upon information and belief, a California corporation with its principal place of business located at 1590 Oakland Road, Suite B-211, San Jose, California.

3. Defendant, Castillo, is adult individual, who upon information and belief, resides at 1850 Davis Court, Los Banos, California.

### Jurisdiction

4. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332, as this controversy involves citizens of different states, and the amount in controversy is more than $75,000.00.

### Venue

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and pursuant to Article 9.11 of the Broker Agreement dated November 21, 2006 between Omega and Innovia (hereinafter the "Agreement"), a copy of which is attached hereto as Exhibit A. See, Exhibit A at p. 9.

### Factual Allegations

6. In or about 2006, Omega and Innovia entered into the Agreement, whereby Innovia offered to act as Omega's broker for purposes of placing mortgage and refinance loans with prospective customers in California, and whereby Omega accepted and agreed to pay broker commissions to Innovia in connection with

2

each loan. The Agreement was reduced to writing on November 21, 2006. See, Exhibit A at p. 1.

7. According to Article 6 of the Agreement, "[Innovia] shall not submit any mortgage loan application or other mortgage loan document containing false or misrepresented information." See, Exhibit A at p. 8. Further, "[Innovia, as broker] shall be responsible for all actions taken in the course of its performance or its obligations under this Agreement...Broker shall repurchase any mortgage loan, upon request of Omega []...if fraud has occurred in the origination of such mortgage loan." Id.

8. According to Article 7 of the Agreement, Innovia is required to indemnify, defend and hold Omega harmless, and reimburse Omega for any and all losses, including attorneys' fees, arising out of a breach of any Article of the Agreement. Id., at pp. 8-9.

9. On or about October 2, 2006, Innovia submitted a mortgage loan application on behalf of Defendant, Castillo and signed by Castillo for refinancing of property she owned located at 1850 Davis Court, Los Banos, California (hereinafter, the "Davis Court property").

10. The mortgage loan application was prepared by and/or with the assistance of Innovia.

11. Castillo stated on the mortgage loan application that the Davis Court property was to be her primary residence, and that she owned rental property located at 1797 De Anza Way, Los Banos, California (the "De Anza Way property").

12. Based upon the representations contained in the mortgage loan application and the accompanying appraisal, Omega approved Castillo's loan, and agreed to lend her $440,000.00 in connection with the refinancing.

13. On or about December 4, 2006, Innovia submitted a second mortgage loan application on behalf of Castillo, which was signed by Castillo, in connection with the Davis Court property. On that mortgage loan application, Castillo reiterated the representations made on the mortgage loan application submitted October 2, 2006.

14. The second mortgage loan application was prepared by and/or with the assistance of Innovia.

15. Innovia also acted as Castillo's realtor in connection with the purchase of the Davis Court property.

16. Contrary to the representations contained in the mortgage loan applications, the Davis Court property is not being used as Castillo's primary residence, and has in fact been vacant for at least 90 days.

17. Contrary to the representations contained in the mortgage loan applications, the De Anza Way property is not and was not being used as rental property by Castillo.

18. The first monthly mortgage payment was due on the refinance loan on or About January 1, 2007. Castillo has failed and/or refused to pay any monthly payment since January 1, 2007.

19. Subsequent to Omega funding the loan to Castillo, Omega sold the loan to American Home Mortgage, Corp. ("AHM")

20. Due to Castillo's failure and/or refusal to pay as required, on or about March 14, 2007, AHM demanded of Omega that it repay the amount outstanding on the Castillo loan, approximately $460,064.73.

## COUNT I
## TEMPORARY AND PRELIMINARY INJUNCTIVE RELIEF

21.     Plaintiff, Omega Financial Services, Inc., reiterates paragraphs 1 through 20 of the Complaint as though set forth at length herein.

22.     Without temporary, preliminary and permanent injunctive relief, Omega will suffer immediate and irreparable harm as its sole source of relief in this case is the Davis Court property, which is vacant, and has been vacant for at least 90 days, thereby threatening the stability and condition of the property.

23.     Omega is without an adequate remedy at law.

WHEREFORE, Plaintiff, Omega Financial Services, Inc., prays for and demands that this Court enter the attached Order entering temporary restraints against Defendants, Innovia Estates & Mortgage Corp. and Maria A. Castillo from selling, transferring, assigning, encumbering, or otherwise affecting title to the Davis Court property, and to show cause why preliminary restraints should not be entered in favor of Omega permanently restraining Defendants, Innovia Estates & Mortgage Corp. and Casatillo from selling, transferring, assigning, encumbering, or otherwise affecting title to the Davis Court property pending the resolution of this litigation.

## COUNT II
## SPECIFIC PERFORMANCE

24.     Plaintiff, Omega Financial Services, Inc., reiterates paragraphs 1 through 23 of the Complaint as though set forth at length herein.

25.     The actions of Defendant, Innovia, as described above in connection with the Agreement constitute breach of contract.

26.     Plaintiff, Omega Financial Services, Inc. is entitled to specific

5

performance of the Agreement.

WHEREFORE, Plaitniff, Omega Financial Services, Inc., prays for and demands judgment in its favor and against Defendant, Innovia Estates & Mortgage Corp., compelling Innovia Estates & Mortgage Corp. to repurchase the mortgage loan issued in connection with the Davis Court property.

### COUNT III
### FRAUD

27. Plaintiff, Omega Financial Services, Inc., reiterates paragraphs 1 through 26 of the Complaint as though set forth at length herein.

28. The actions of Innovia and Castillo in representing material facts which were untrue on the mortgage loan applications constitute fraud, as Omega relied upon those representations to its detriment, and would not have funded the loan to Castillo but for Castillo's representations.

WHEREFORE, Plaintiff, Omega Financial Services, Inc., prays for and demands judgment in its favor and against Defendants, Innovia Estates & Mortgage Corp. and Maria Castillo, for compensatory damages, punitive damages, interest, costs of suit, attorneys fees and any other relief this Court deems equitable and just.

### COUNT IV
### BREACH OF CONTRACT

29. Plaintiff, Omega Financial Services, Inc., reiterates paragraphs 1 through 28 of the Complaint as though set forth at length herein. The Agreement between Innovia and Omega is a valid contract, insofar as Innovia offered to act as Omega's broker in providing mortgage loans; Omega accepted Innovia's offer; and Innovia

6

received consideration in the form of broker fees in connection with placing Omega's mortgage loans.

30. Innovia's conduct as described above constitute breach of contract, in that Innovia failed to abide the requirements of the Agreement that it would not submit fraudulent mortgage loan applications to Omega.

WHEREFORE, Plaintiff, Omega Financial Services, Inc., prays for and demands judgment in its favor and against Defendant, Innovia Estates & Mortgage Corp. in the amount of $460,064.73, plus interest, costs, attorneys fees, and any other relief this Court deems appropriate.

Respectfully submitted,

Dated: 3/28/07

THE CHARTWELL LAW OFFICES, LLP
By: _____
Michael J. Needleman, Esquire

EXHIBIT "A"

Nov 21 2006 1:15PM   HP LASERJET 3330                                          p.7



## Omega Financial Services, Inc.
Licensed Mortgage Banker ~ FL- NJ- PA-TX Dept of Banking
Toll Free 1 800 663-4220
Web: www.omegafinancialservicesinc.com

### BROKER AGREEMENT

THIS BROKER AGREEMENT (Agreement) is entered into as of this 21 day of November 200_, by and between Omega Financial Services, Inc ("LENDER"), having its principal office at 1870 Morris Ave Union, NJ 07083 and Unonin Estates Mortgage __ Mortgage ("Broker") having its principal office at 620 Oakland Dr #B24 5th ___ CA ("Office").
95131

WHEREAS, Lender engages in the business of originating residential loans ("Mortgage Loans"); and

WHEREAS, Broker is in the business of submitting to Lenders loan application packages on behalf of its clients who are seeking residential loans.

WHEREAS, from time to time, Omega Financial desires to underwrite and close such Mortgage Loans, and sell the Mortgage Loans in the secondary mortgage market under Omega Financials Mortgage Loan Programs, and Broker agrees to such Mortgage Loans to Omega Financial on the terms and conditions set forth herein.

NOW THEREFORE, for mutual consideration the receipt and sufficiency of which are hereby acknowledged, the parties, intending to be legally bound, agree as follows:

#### DEFINITIONS

*Borrower.* The person or persons who submit an application to Broker and receive a Mortgage Loan the subject of this Agreement.

*Laws.* All federal, state, county, local, and foreign laws, regulations, licensing requirements, ordinances, codes, and orders that may be applicable to Broker's business and ability to perform its obligations hereunder, as may be amended or supplemented from time to time.

*Mortgage.* A valid enforceable mortgage, deed of trust, or other instrument pledging property as security for payment of a Note.

*Mortgage Loan.* A loan secured by a lien on commercial property which is the subject of this Agreement, evidenced by a Note and Mortgage, including the Mortgage Loan Documents and all other instruments evidencing a borrower's indebtedness.

*Mortgage Loan Documents.* Any and all other documents or materials which are required to be maintained or prepared in connection with the origination and closing of Mortgage Loans pursuant to this Agreement.

*Mortgage Loan Program.* A type of Mortgage Loan, the terms and conditions of which are described in the Policies, and which can be offered to prospective Borrowers as an eligible Mortgage Loan under the terms of this Agreement.

*Mortgaged Property.* The property encumbered by the Mortgage.

*Note.* A valid and enforceable promissory note or other instrument, which evidences a Borrower's obligation to repay a Mortgage Loan.

*Policies.* All documents and information containing the policies and procedures issued from time to time by Omega Financial applicable to the origination of Mortgage Loans pursuant to this Agreement. These Policies can be modified in part or in whole at any time by Omega Financial immediately upon written notice to Broker. The Policies and all revisions thereto are expressly incorporated by reference and are made a part of this Agreement in all respects.

*Third Party Investor.* Any purchaser of Mortgage Loans from Omega Financial identified as such in the Policies of Omega Financial.

*Underwrite, "Underwrite" or "Underwriting"* means the examination of a Borrower's application, credit history, income and financial resources using underwriting standards for the purposes of determining whether to extend credit to a Borrower.

5

Nov 21 2006 1:16PM   HP LASERJET 3330

p.8

## ARTICLE 1
## ELIGIBLE LOANS; PRICING

**1.1 OMEGA FINANCIAL MORTGAGE LOAN PROGRAMS.** Omega Financial shall from time to time, distribute to Broker information with respect to the types of Commercial Mortgage Loans originated by Broker that it is willing to close. Omega Financial will close only Mortgage Loans eligible for the Mortgage Loan Programs offered by Omega Financial. Broker acknowledges that Omega Financial reserves the right to alter, add, or delete Mortgage Loan Programs from time to time by amending its Policies and Broker accepts responsibility for knowing which Mortgage Loan Programs are offered by Omega Financial at any given time.

**1.2 STANDARDS AND GUIDELINES.** Omega Financial reserves the right to use the standards and guidelines of Third Party Investors and the Agencies and to incorporate their respective standards and guidelines for its Mortgage Loan Programs.

**1.3 MORTGAGE LOAN PRICING.** Omega Financial shall issue to Broker on periodic basis pricing information applicable to Mortgage Loans it will close. Such pricing information is subject to change without notice. All payments to Broker, either by borrower upon closing of the Mortgage Loan, or by payment by Omega Financial of a yield spread premium, shall be upon agreement of the parties consistent with Omega Financial's Loan Programs.

## ARTICLE 2
## DUTIES OF BROKER

**2.1 ORIGINATION.** Broker shall originate all Mortgage Loans at its offices in its own name and shall be responsible for providing Mortgage Loan applications and related disclosures required by any and all Laws to prospective Borrowers and for obtaining executed Mortgage Loan applications and disclosure forms.

**2.2 UNDERWRITING.** Broker shall promptly submit each Mortgage Loan for Underwriting by Omega Financial or its agent prior to closing.

**2.3 PROCESSING.** Broker shall process the Mortgage Loan application according to Omega Financial's Policies, and in accordance with any and all Laws.

## ARTICLE 3
## DUTIES OF OMEGA FINANCIAL

**3.1 REGISTRATION OF MORTGAGE LOANS.** Omega Financial shall send Broker a written confirmation of the registration of each Mortgage Loan. Neither Broker's registration nor Omega Financial's confirmation of registration shall obligate Omega Financial to close the Mortgage Loan if the Mortgage Loan does not otherwise meet the criteria set forth in this Agreement and in the Policies, and if the Mortgage Loan does not satisfy Omega Financial's underwriting standards.

**3.2 UNDERWRITING OF REGISTERED MORTGAGE LOANS.** Omega Financial, or its agent in Omega Financial's discretion, shall underwrite every registered Mortgage Loan. Omega Financial shall have no obligation to approve a Mortgage Loan, which in its sole discretion does not meet Omega Financial's Underwriting requirements. In making its determination, Omega Financial expressly disclaims any inference Broker may draw as to the general quality or acceptability of the Mortgage Loan application. Omega Financial retains sole and absolute discretion to reject any Mortgage Loan application submitted for closing which does not comply with the terms and conditions of this Agreement or Omega Financial's Policies, or for any reason whatsoever (except as prohibited by law), and to set the terms and conditions of any approval or a Mortgage Loan. Omega Financial shall notify Broker of Omega Financial's disposition of a Mortgage Loan application submitted for closing consistent with its policies.

**3.3 REJECTION OF MORTGAGE LOANS.** Omega Financial, in its sole discretion, may reject any Mortgage Loan, which does not comply with the terms and conditions of this Agreement or the Policies, or for any other reason within its total discretion. Nothing contained in this Agreement shall be construed to require Omega Financial to close a Mortgage Loan registered with it.

## ARTICLE 4
## GENERAL REPRESENTATIONS, WARRANTIES AND COVENANTS OF BROKER

As an inducement to Omega Financial to enter into this Agreement and to consummate the transactions contemplated hereunder, Broker represents, warrants and covenants to Omega Financial as follows:

**4.1 DUE ORGANIZATION; GOOD STANDING.** Broker was, and continues to be duly organized, validly existing and in good standing during the time of its activities with respect to the origination of the Mortgage Loan subject to this Agreement.

6

Nov 21 2006 1:16PM    HP LASERJET 3390    p.8

**4.2 AUTHORITY AND CAPACITY.** Broker has all power, authority and capacity legally required to enter this Agreement and to perform the obligations required of it hereunder. The execution and delivery of this Agreement and the consummation of the transactions contemplated hereby, have been duly and validly authorized by all necessary action legally required. This Agreement constitutes a valid and legally binding Agreement of Broker enforceable in accordance with its terms.

**4.3 EFFECTIVE AGREEMENT; NO CONFLICTS.** The execution, delivery and performance of this Agreement by Broker, its compliance with the terms hereof and consummation of the transactions contemplated hereby, will not violate, conflict with, result in a breach of, give rise to any right of termination, cancellation or acceleration under, constitute a default under, be prohibited by or require any additional approval under its charter or other applicable organizational documents or any instrument or agreement to which it is a party or by which it is bound, or any Law, or any judicial or administrative decree, order, ruling or regulation, applicable to it.

**4.4 COMPLIANCE WITH LAWS.** Broker has complied, and shall comply, both in the conduct of its business generally, and in its origination of each Mortgage Loan, with all applicable Laws, including, without limitation upon the generality of the foregoing, the Equal Credit Opportunity Act ("ECOA") and Regulation B, including without limitation its requirements relating to nondiscrimination; the Truth-In-Lending Act and Regulation Z; the Real Estate Settlement Procedures Act ("RESPA") and Regulation X; and state laws and regulations governing mortgage lending and mortgage brokerage.

**4.5 NOTICE OF THREATENED ACTIONS.** Broker has not been issued any administrative order, cease and desist decree or been the subject of regulatory action. Broker shall immediately advise Omega Financial in writing of any inquiry pending or threatened action, by way of a proceeding or otherwise, to revoke or limit any license, permit, authorization or approval issued or granted by any federal, state or local government or quasi-governmental body, or any agency or instrumentality thereof, necessary for Broker to conduct its business, or to impose any penalty or other disciplinary sanction in connection therewith, or any other sanction that would materially effect Broker's business. In addition, in the Broker receives any letter, notice, or other writing ("Notice") from a Third-Party Investor or any regulatory agency with respect to any Mortgage Loan sold to Omega Financial, Broker shall advise Omega Financial immediately of such Notice and deliver a copy of the Notice to Omega Financial.

**4.6 LITIGATION.** Except as previously disclosed in writing to and acknowledged in writing by Omega Financial, Broker is not party to (a) any litigation, as a defendant, involving fraud, misrepresentation, violation of any state or federal lending laws or regulatory compliance, or (b) any negative investor or regulatory finding through audits or examinations or mortgage guaranty insurance investigations.

**4.7 NO UNTRUE OR MISLEADING STATEMENTS.** No representation, warranty or written statement made by Broker to Omega Financial in this Agreement or any schedule, written statement or document furnished to Omega Financial in connect with the transactions contemplated hereby Broker contains or will contain any untrue statement of a material factor or omits or will omit to state a material fact necessary to make the statements contained herein or therein not misleading.

**4.8 INSURANCE.** Unless otherwise agreed to in writing, Broker possesses and shall maintain, at no expense to Omega Financial, during the term of this Agreement, fidelity bond coverage and errors and omissions insurance, and shall furnish evidence of such coverage to Omega Financial. Such policies shall be in reasonable amounts, with acceptable standard coverage, satisfactory to Omega Financial. Broker shall notify Omega Financial of changes thereto or cancellations thereof.

**4.9 ABILITY TO PERFORM.** Broker represents that it employs or will employ a sufficient number of knowledgeable and capable individuals to perform the services required by this Agreement.

## ARTICLE 5
## REPRESENTATIONS, WARRANTIES AND COVENANTS
## AS TO MORTGAGE LOANS

As further inducement to Omega Financial to enter into this Agreement and to close the Mortgage Loans hereunder, Broker represents, warrants and covenants to Omega Financial as follows:

**5.1 VALID LIEN.** To the best of the Broker's knowledge, the borrower has no rights of rescission, set-offs, counterclaims or defenses to the Note or Mortgage securing the Note arising from the acts and/or omissions of Broker in the origination, processing or closing of the Mortgage Loan.

**5.2 LEGAL CAPACITY.** To the best of the Broker's knowledge, all parties signing the Mortgage Loan documents had and have the legal capacity and authority to do so and the documents have been duly executed and delivered by each such party.

7

Nov 21 2006 1:17PM   HP LASERJET 3330                                                    p.10

**5.3 GENUINE DOCUMENTS.** All documents submitted by Broker pursuant to this Agreement are genuine and complete in all respects; all certified copies of original documents are true copies of the originals.

**5.4 COMPLIANCE WITH LAWS.** In brokering the Mortgage Loan to Omega Financial, the Broker has acted in compliance with all applicable Laws.

**5.5 COMPLIANCE WITH OMEGA FINANCIAL'S POLICIES AND PROCEDURES.** The origination and closing of the Mortgage Loan comply in all respects with Omega Financial's policies, procedures and requirements. Unless separately agreed to in writing by Omega Financial and Broker, each Mortgage Loan submitted for closing was originated by Broker and not originated by a third party. All Mortgage Loan Documents and applications for Mortgage Loans and information and documentation submitted in connection with such applications have been prepared and/or completed in accordance with Omega Financial's policies, procedures, and requirements and all information provided by Borrower and Broker contained in such Mortgage Loan Documents, applications or other documents and/or provided to any Agency or private mortgage insurer is true and correct in all respects and does not fail to disclose any facts which could be material or which would make such information misleading.

**5.6 FACTUALLY DISCLOSURE.** With regard to all Mortgage Loans submitted to Omega Financial hereunder, all facts relating to any Mortgage Loan transaction which are known or should be known to Broker which may adversely affect the value of the Mortgaged Property, the credit, character or capacity of the Borrower, the validity of the Mortgage, or any other aspect of the transaction have been disclosed in writing to Omega Financial and, if applicable, the appropriate agency.

**5.7 NO ADVERSE CIRCUMSTANCES.** Broker has no knowledge of any circumstances or conditions with respect to any Mortgage Loan, Mortgaged Property, Borrower or Borrower's credit standing that reasonably could be expected to cause Third Party Investors or the Agencies to regard any Mortgage Loan as an unacceptable investment, cause any Mortgage Loan to become delinquent or adversely affect the value or marketability of the Mortgage Loan.

**5.8 NO OTHER AGREEMENTS.** Broker or any other person or entity known to Broker has not made, directly or indirectly, any payment on the Mortgage Loan application or on any other loan of Borrower. Broker has also not made any agreement with any Borrower providing for any variation of the Note rate, schedule of payment or other terms and conditions of the Mortgage Loan; and Broker has not received a request for approval or notice of any proposed assumption, loss draft or payoff of the Mortgage Loan.

**5.9 APPRAISAL.** The appraisal for each Mortgaged Property, if ordered by the Broker, sets forth the appraised value of the related Mortgaged Property, was made in connection with the origination of the related Mortgage Loan and was signed, prior to the approval of the Mortgage Loan, by an appraiser who has no interest, direct or indirect, in the Mortgaged Property or any loan made on the security thereof, and whose compensation was in no way affected by the approval or disapproval of the application for the Mortgage Loan.

Each of the above representations and warranties (a) applies to any and all Mortgage Loans brokered by Broker to Omega Financial, (b) is for the benefit of Omega Financial and its successors and assigns, (c) continues in full force and effect for so long as the Mortgage Loan remains outstanding and for such time that Omega Financial is subject to any risk or loss or liability as to any Mortgage Loan sold by Broker, and (d) is in addition to any other specific representations or warranties contained elsewhere herein.

### ARTICLE 6
### RESPONSIBILITY FOR FRAUD

Broker shall not submit any Mortgage Loan application or other Mortgage Loan Document containing false or misrepresented information. Broker shall be responsible for all actions taken in the course of its performance or its obligations under this Agreement, whether performed by Broker, its employees or licensees. Broker shall repurchase any Mortgage Loan, upon request of Omega Financial or its successors or assigns, if fraud has occurred in the origination of such Mortgage Loan.

### ARTICLE 7
### INDEMNIFICATION

Broker shall indemnify, defend and hold Omega Financial harmless against and in respect of, and shall reimburse Omega Financial for any and all losses, claims, damages, costs including without limitation attorney's fees and costs, and actions suffered or incurred by Omega Financial which arise out of, result from or relate to: (a) the breach by Broker of any covenant, condition, term, obligation, representation or warranty contained in this Agreement or any Addendum hereto, or Omega Financial's Policies, or in any written statement, certificate or Mortgage Loan Document furnished by Broker pursuant to this Agreement or any Addendum hereto, or the Policies, including, without limitation, those arising from any improper origination or processing of Mortgage Loans, or (b) any material act or omission of Broker or any employee or agent of Broker which adversely affects any Mortgage Loan closed by Omega Financial hereunder. Without limiting the foregoing, Broker's obligations under this Article 7 shall include costs and expenses associated with Omega Financial's efforts to require Broker to repurchase Mortgage Loans in accordance with Article 6 hereof, in all actions with third parties in which Omega Financial has the right to be indemnified hereunder, Omega

6

Financial shall have the complete and exclusive right to determine the conduct and defense of such legal proceeding or investigation with such third party including, without limitation, the right to compromise, settle, defend or continue any such action.

## ARTICLE 8
## TERM; TERMINATION

**8.1 TERM.** The term of this Agreement shall commence as of the date hereof and shall extend until the termination of this Agreement pursuant to this Article. Broker acknowledges that Omega Financial may terminate Broker's participation in Omega Financial's Brokerage program, with or without cause and at Omega Financial's sole discretion, pursuant to this Article. Broker and Omega Financial agree that this Agreement does not constitute an obligation or commitment of Broker to submit, sell or deliver any specific loan, or of Omega Financial to approve or purchase any specific loan or loans under Omega Financial's Brokerage program.

**8.2 TERMINATION WITHOUT CAUSE.** Omega Financial or Broker may terminate this Agreement without cause upon sixty (60) days written notice to the other party. Such termination shall not in any respect change or modify the obligations of the parties with respect to (a) loan applications which have been registered with Omega Financial prior to the date of termination or (b) Broker's obligations under this Agreement accruing prior to the date of termination.

**8.3 TERMINATION FOR CAUSE.** Notwithstanding anything to the contrary herein, Omega Financial may terminate this Agreement immediately, upon written notice to Broker (a) if Omega Financial determines that fraud has occurred in the origination or closing of any Mortgage Loan, (b) if Broker fails to perform any of its obligations under this Agreement. If terminated by Omega Financial under this paragraph, Omega Financial shall have no obligation to Broker after the date notice is given to purchase any Mortgage Loan, irrespective of whether an application has been registered or a commitment issued by Omega Financial.

**8.4 SURVIVAL.** All of Broker's representations and warranties, obligations of repurchase in Article 7, and of indemnification in Article 8, shall survive any termination of this Agreement, and shall be fully applicable whether or not Omega Financial relies thereon or has knowledge of any facts at variance therewith.

## ARTICLE 9
## MISCELLANEOUS

**9.1 ASSIGNMENT.** Omega Financial shall have the right to assign or transfer this Agreement and its duties, obligations or rights there under. Broker may not assign, transfer or subcontract any of its duties, obligations or rights under this Agreement without Omega Financial's prior written consent. A change in the ownership of, or merger or consolidation of broker, or sale by Broker of substantially all of its assets shall be considered an assignment for purposes of this Agreement. In the event Omega Financial assigns any of its rights in the Mortgage Loans closed hereunder, such assignee shall have the same rights as Omega Financial with respect to this Agreement.

**9.2 NOTICES.** Any notice or demand shall be in writing and shall be deemed to have been given if either served personally or sent by prepaid, registered or certified mail, return receipt requested, or by overnight courier. Notices shall be addressed to each party as indicated on the page of this Agreement where such party has executed this Agreement. Either party may give notice of its change of address by written notice to the other.

**9.3 BOOKS AND RECORDS.** Broker shall prepare and maintain files of Mortgage Loan Documents in accordance with applicable guidelines established in the Policies and applicable Third-Party Investor and Agency guidelines. Broker and Omega Financial shall keep and maintain a complete and accurate account, satisfactory to Omega Financial, of all funds collected and paid relating to the Mortgage Loans. Broker shall give Omega Financial, its employees, and its representatives, including without limitation internal and external auditors, quality control auditors, attorneys and regulatory agency examiners, access, upon reasonable notice and during normal business hours, to audit and inspect Broker's files, books, reports, statistics and other documents of Broker relating to its obligations under this Agreement. In addition, Broker will cooperate with Omega Financial, its auditors and/or regulatory examiners in any audit of Omega Financial and in any regulatory examination of Omega Financial.

**9.4 RELATIONSHIP OF PARTIES.** Neither party is the partner, agent, employee or representative of the other and nothing in this Agreement shall be construed or deemed to create a partnership, joint venture, agency or employment relationship between Omega Financial and Broker. Broker shall conduct business in its own name and not in Omega Financial's name. Broker shall not represent that its office is an office, branch or agent of Omega Financial or in any other way connected with Omega Financial. Broker shall have no authority to sign any documents on behalf of Omega Financial. Broker shall be responsible for its overhead and operations costs, payroll costs and all other costs.

**9.5 BROKERS.** Each party represents and warrants that there are no claims for brokerage commissions or finder's fees or other claims for money from any agent or similar intermediary in connection with Broker's entering into this Agreement with Omega Financial, and each party agrees to indemnify and hold harmless the other party with respect to any and all liability for any such fee or commission which is required to be paid to any such agent or broker.

9

Nov 21 2006 1:19PM    HP LASERJET 3330                                                    p.12

9.6 CONFIDENTIALITY. Broker understands that all information provided to Broker in connection with this Agreement, including but not limited to that information contained in its Policies, is confidential and proprietary to Omega Financial. Broker agrees to keep in confidence and not disclose to any third party, duplicate, or use for the benefit of any third party, any such information given to Broker, and agrees to return all documents and other media containing such information to Omega Financial upon termination of this Agreement. Broker further agrees not to sell, transfer or otherwise give to any person or firm, or otherwise use, directly or indirectly, any compilation or list of Borrowers.

9.7 ADVERTISING AND TRADEMARK. Broker shall not engage in any form of advertising whatsoever utilizing either the name of Omega Financial or any subsidiary or affiliate of Omega Financial or any of the product names, trade names, symbols or trade-marks of any of Omega Financial's loan products, unless specifically licensed in writing to do so.

9.8 ENTIRE AGREEMENT. This Agreement, any Addenda (if executed by the parties concurrently herewith or in the future), the Policies, and any other agreement, document or instrument attached hereto or referred to herein or in the Policies, contain the entire Agreement between the parties and supersedes all prior agreements and understandings with respect to the subject matter hereof. In the event of any conflict between the terms, conditions and provisions of

this Agreement, the Addenda, the Policies, and any such agreement, documents or instrument, the terms, conditions and provisions of the Policies shall prevail.

9.9 MODIFICATION AND WAIVER. No termination, cancellation, modification, amendment, deletion, addition or other change in this Agreement, or any provision hereof, or waiver of any right or remedy herein provided, shall be effective for any purpose unless specifically set forth in writing signed by an authorized officer of the party or parties to be bound thereby. The waiver of any right or remedy in respect of any one occasion shall not be deemed a waiver of such right or remedy in respect of such occurrence or event on any other occasion. Nothing in this paragraph shall be interpreted to restrict Omega Financial's right to modify its Policies as provided for elsewhere in this Agreement.

9.10 SURVIVAL OF PROVISIONS. The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of the other provisions, all of which shall remain in full force and effect. All of the covenants, agreements, representations and warranties made herein by the parties hereto shall survive and continue in effect after the termination of the Agreement or the consummation of the transactions contemplated hereby.

9.11 GOVERNING LAW; JURISDICTION. This Agreement shall be governed by, and construed and enforced in accordance with, applicable federal law and the laws of the State of New Jersey. Any action arising out of this Agreement or the transactions contemplated hereby may be instituted in any state or federal court located in the State of New Jersey. Further, each party expressly waives any objection which such party may have to the laying of venue of any such action, and irrevocably submits to the jurisdiction of any such court and agrees to be fully bound by any final unappealed decision of those courts.

9.12 AGREEMENT FAIRLY CONSTRUED. This Agreement shall be construed fairly as to both parties and not in favor or against either party, regardless of which party prepared this Agreement.

9.13 HEADINGS. The headings of the various sections of this Agreement have been inserted for convenience of reference only and shall not be deemed to be a part of this Agreement.

9.14 GOOD FAITH DEALING. The parties hereto agree to deal in good faith with each other at all times.

9.15 EXPENSES. Each party shall pay its own expenses incident to this Agreement and the transactions contemplated hereby, but not limited to, all fees of its counsel and accountants, whether or not any of the transactions contemplated shall be consummated.

9.16 COUNTERPARTS. This Agreement may be executed by one or more of the parties to this Agreement on any number of separate counterparts and all of said counterparts taken together shall be deemed to constitute one and the same instrument.

    If to Lender        Omega Financial Services, Inc.
                        1572 Morris Avenue
                        Union, NJ 07083
                        Attn: Broker Approval Department

    If to Broker        Knauto Estates & Mortgage Corp.
                        1570 Oakland Pl. #B-211
                        San Diego, CA 92101

10

Nov 21 2006 1:16PM    HP LASERJET 3330                                          p.13

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and sealed as of the day and year first above written.

Omega Financial Services, Inc.                BROKER: _Innotka Estates & Mortgage_ Corp
a, New Jersey Corporation                     a _California corporation_
By: ~~[signature]~~                           By: [signature]
Its: _Adel Michael, President_                Its: _President_

11

Nov 21 2006 1:19PM     HP LASERJET 3330                                             p.14

### Broker Agreement Addendum

This addendum is made to Agreement, dated _November 21_, 2006, between Omega Financial Services, Inc., a New Jersey Corporation, located at 1872 Morris Avenue, Union, NJ 07083 (herein known as Lender) and _Innovate Estates & Mortgage Corp -_ (herein known as a Broker) a California corporation, located _1690 Oakland Rd. Suite B-211 S.J. CA 95131_

As per referenced agreement, Broker is approved to submit loans to Lender for underwriting and closing. In order to maintain accurate compliance with regards to Borrowers rights, Lender is required to provide all Borrowers with state approved Mortgage Services agreement.

This addendum is to provide the Broker acknowledges that it is his/her responsibility to comply with the disclosures as the designated provider of the Mortgage Services Agreement and other requirements imposed by the relevant state regulations.

This does not void any representations or warranties as stated in the original agreement and in the event there is any conflict between this addendum and the original agreement will prevail.

Omega Financial Services, Inc.            Broker Firm Name: _Innovate Estates & Mortgage Corp._
1872 Morris Avenue                        _1690 Oakland Rd. suite B-211_
Union, NJ 07083                           _San Jose, CA 95131_

By: _____              By: _____
    (Signature)                             (Signature)
    _Noel Michael, President_               _David Nguyen/President_
    (Print Name, Title)                     (Print Name, Title)

12

Nov 21 2006 1:18PM    HP LASERJET 3330                                        p.15

## Fair Lending Principles and Broker Disclosure

Omega Financial Services, Inc. is committed to the spirit and letter of Federal and State Fair Lending Laws and Regulations, which are designed to promote fair and equal access credit. Omega Financial Services, Inc. will fulfill this commitment while maintaining prudent credit discipline and achieving an acceptable return for its shareholders. In keeping with this policy statement, Omega Financial Services, Inc. expects all officers, employees, correspondents, and brokers to comply with the following Fair Lending Principles as a condition of employment or as a condition for conducting business with Omega Financial Services, Inc.

1. We shall not discriminate against a loan applicant on the prohibited bases of race, color, religion, national origin, sex, marital status, handicap, familial status, age, sexual orientation, the fact that all or part of an applicant's income comes from any public assistance program, or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act or any similar state law.

2. We shall not fail to provide information or services or provide different information or services, including credit availability, applications procedures, or lending standards on a prohibited basis.

3. We shall not selectively encourage applicants and we will take no action that would, on a prohibited basis, discourage a reasonable person from applying for a mortgage loan. We will not refuse to deal with individuals inquiring about credit, discourage inquiries or applicants by delays, discourtesy, or other means.

4. We shall not, on a prohibited basis, provide different, incomplete, or misleading information about the availability of loans, applications requirements, and processing and approval standards and procedures (including selectively informing applicants about certain loans products while failing to inform them of alternatives).

5. We shall not, verbally or in writing, express a preference based on a prohibited factor or indicate that we will treat applicants differently on a prohibited basis.

6. We shall not, on a prohibited basis, refuse to make a loan, vary the terms offered including the amount, interest rate, period of type of loan, or use different standards to evaluate collateral or decide whether to extend credit.

7. We shall not, on a prohibited basis, treat similarly situated applicants differently, including the amount of assistance offered, encouragement, or information we give the applicant during the application process.

8. We shall not, on a prohibited basis, discriminate because of the characteristics of a person associated with the applicant including a joint applicant, spouse, business partner, the present or prospective occupants of the property to be financed, or the area where the property is located.

9. We shall avoid practices or policies that may have a discriminatory impact.

10. We are committed to nondiscriminatory marketing.

11. We have a policy of providing services and making mortgage loans in such a way that we help meet the credit needs of our communities, including low and moderate income neighborhoods, consistent with the safe and sound operations of this company.

12. We shall not treat a borrower differently in servicing a loan or invoking default remedies on a prohibited basis.

ACKNOWLEDGMENT I, _Douid Neuyen_____ the undersigned, acknowledge that I have read, understand, accept, and agree to comply with the fair lending principles referred to and described herein.

Broker Name: _Innoko Estates & Mortgage Corp._

By: ___(Signature)___                                          _11/21/2006_
                                                                 (Date)

_Douid Nauyen / President_
(Print Name, Title)

13